WORTMAN *v.* STAFFORD.

1. EASEMENTS — LICENSE — PERMISSIVE USER — EVIDENCE — ORAL PROOF.

In a suit to quiet title to a strip of land in which defendant claimed a right of way by prescription, evidence that a gross sum far in excess of the value of the land itself was paid down by defendant's father for the right to use it as a way, that the strip was defined and set off by a fence, that possession for said purpose was taken, and that no rent was ever thereafter paid or claimed during the 40 succeeding years in which said strip was used by the grantee and his successors, *held*, to indicate an easement rather than a lease or license, although the transaction rests in oral evidence with no proof that the agreement was in writing.

2. SAME—PRESCRIPTION—LIMITATIONS, STATUTE OF.

If the right granted to use the strip of land as a way was a mere license, or only permission, with or without consideration, without any permanent or actual interest in the land itself, it could not ripen into an easement by prescription; but if the right, though orally granted, was in the nature of an easement or a permanent interest in the land, without profit, in the nature of a dominant estate, with the right at all times to enter and use it for the purpose specified, it might be acquired by prescription in the same manner as title to the fee of the land and within the same time.

3. SAME—PRESUMPTIONS—EVIDENCE—SUFFICIENCY.

Testimony on behalf of plaintiff *held*, insufficient to establish that the undisputed user running through 40 years was permissive only as against the presumption of an easement from the undisputed facts in the case.

4. SAME—LIMITATIONS, STATUTE OF—"TACKING ON."

Where the statute of limitations had run its course in favor of defendant's predecessor long before defendant came into possession, the question of his right to "tack on" the period of his use and occupation to that of his prede-

---

On acquisition of easement by prescription where original use was under license, see note in 44 L. R. A. (N. S.) 89.

cessor is not involved, since peaceable possession and user continued in him as of right and not of suffrance and was but confirmatory of his established easement.

5. SAME — CONVEYANCES — RIGHT PASSES WITH TITLE TO LAND WITHOUT SPECIAL MENTION.

Plaintiff's contention that defendant acquired no right to said driveway because no mention is made of it in his muniments of title to the land it connects with the highway is without merit, since the easement rested upon the servient estate it crossed as an incorporeal hereditament appurtenant to the otherwise isolated land of defendant, for the benefit of which it was secured, incident to that estate as directly essential and convenient to its use and enjoyment, and as such would pass with it by inheritance or conveyance.

Appeal from Hillsdale; Chester (Guy M.), J.　Submitted October 27, 1921.　(Docket No. 6.)　Decided March 30, 1922.

Bill by La Vern Wortman against George M. Stafford to quiet title to land, and enjoin suit at law. From a decree for defendant, plaintiff appeals.　Affirmed.

*Merton Fitzpatrick*, for plaintiff.

*C. A. Shepard* and *Paul W. Chase*, for defendant.

STEERE, J.　Plaintiff owns and resides upon 40 acres of land in Hillsdale county described as the S. E. ¼ of the N. W. ¼, section 20, in Allen township. A highway runs east and west through it about 20 rods south of its north line.　Defendant owns the 40 acres joining plaintiff's on the north, which cannot be reached by a highway and is accessible to him only by going over the land of others.　These two pieces of land are not claimed to have ever belonged to the same owner or been a part of the same farm. Plaintiff bought his 40 acres in 1915.　Defendant

acquired full ownership of his 40 acres in 1918. It had previously belonged to his father, Jonathan Stafford, who died about 1912 leaving it to his children and defendant subsequently bought the interest of the other heirs, his home being on a farm which he owns south of the east and west highway. He used and belligerently claimed a right of way by prescription from the highway north to his 40 acres over a strip of land in plaintiff's 40 acres about 20 rods long and 2 rods wide adjacent to its west line. Diversity of opinion on this subject between these parties led to open hostilities and litigation, culminating in this bill of complaint, wherein plaintiff prays that his "title and possession" of said strip may be quieted and defendant restrained "from further prosecuting any suits at law that he may have started" and from "using or threatening to use personal violence towards your orator." Defendant answered in denial with assertion of title to a right of way contractually secured by his father and perfected by prescription, in its nature a "perpetual easement incident to the property of the late Jonathan Stafford, his successors and assigns."

Defendant's father, Jonathan Stafford, bought the 40 acres lying north of plaintiff's, which then belonged to John Watkins, considerably over 40 years before this suit was begun. At first in getting to it from the highway he took liberties in traveling over Watkins' land which irritated the latter and some friction followed between the two. This soon culminated in an amicable adjustment between them under which the elder Stafford secured from Watkins a right of passage to his 40 along the way now in dispute, paying him $50 therefor, although the then value of the land upon which the right rested did not exceed $10, as the trial court determined. He then built a fence two rods east of the west line fence of Watkins' 40

acres running from the highway to his 40, making a lane two rods wide which he continued to use during the remainder of his life, or over 30 years, as and for all purposes incident to a right of way appurtenant to his otherwise isolated 40, while Watkins and his successors pastured their animals on it whenever they saw fit to do so.   There is no proof either way of any writings in reference to this transaction between Watkins and the elder Stafford, both of whom died years before this trouble arose.   The proof is undisputed, however, that as long thereafter as the elder Stafford and Watkins lived everything was amiable between them upon this subject, and Watkins always recognized Stafford's right to this lane as a roadway for all purposes of travel and transportation to and from his 40.   The elder Stafford repaired and maintained the fence he had built along the east side of the lane during his lifetime but it was neglected by those who succeeded him and disappeared before this controversy arose, having been "either taken down or worn away by the elements," as one witness accounts for its disappearance.

As to the nature of the right acquired by the elder Stafford from Watkins, defendant contends that his father bought and paid for a perpetual right of way, or easement, while plaintiff claims it was but a life lease or mere license.   The contracting parties were dead and no direct witness to their agreement was produced.   An old neighbor who for years had not been on speaking terms with defendant testified that he once heard some talk between Watkins and the elder Stafford about "buying a right of way to a farm" in which Watkins offered to lease the latter a lane on his east line for $25 or on the west for $50 and Stafford said emphatically he would not "buy a lane through the swamp for $25, he would rather have the hard land for $50," and on another occasion he

heard Stafford say "he paid enough for that lane that he ought to have a deed of it" but he only had a lease. Defendant testified his father bought the right of way, but admitted he did not hear the bargain, and told of hearing Watkins on a certain occasion say of their right to the lane, referring to the Staffords, "You own the driveway across there." Other witnesses produced by the parties give yet more doubtful and unsatisfactory testimony of a hearsay character as to what some third party had told them or their understanding of the matter.

Stating the controlling question to be "whether or not the rights granted by John Watkins to Jonathan Stafford were a license or an easement," the trial court found, as the practically undisputed evidence shows, that the elder Stafford paid several times the value of the land included in this lane when he acquired from Watkins a way of travel along it more than 40 years before this controversy arose, and since that time he and his successors in title to the north 40 which it connected with the highway have openly, notoriously and continuously used it as a right of way to and from said 40, claiming to do so as a matter of right. Against the presumption of a grant of an easement arising from such a state of the facts the court held plaintiff had failed to show such use was permissive only (citing *Berkey & Gay Furniture Co. v. Milling Co.*, 194 Mich. 234), and dismissed his bill of complaint, confirming defendant's right to a use of said lane as a way of access appurtenant to his 40 acres.

If the right granted the elder Stafford was a mere license, or only permission, with or without consideration, to do some act or series of acts on the premises without any permanent or actual interest in the land itself, it could not ripen into an easement by prescription (*Standard v. Jewell*, 206 Mich. 61); but if the

right, though orally granted, was in the nature of an easement or a permanent interest in another's land without profit in the nature of a dominant estate with the right at all times to enter and use it for the purpose specified it might be acquired by prescription in the same manner as title to the fee of the land and within the same time. *Dummer* v. *U. S. Gypsum Co.,* 153 Mich. 622; *Bean* v. *Bean,* 163 Mich. 379.

This ancient transaction rests on oral evidence with no proof that the agreement was in writing. The facts surrounding it indicate an easement rather than a lease or license. A gross sum far beyond the value of the land itself was paid down, the strip was defined and set off by a fence, possession for the purposes of a right of way taken, and no annual rent was ever thereafter paid or claimed during the 40 succeeding years in which the elder Stafford and his successors openly and peaceably used this lane as a right of way to the 40 acres in relation to which he had so secured right of access.

In *Berkey & Gay Furniture Co.* v. *Milling Co., supra,* it is said, with sustaining authorities:

"It has been held that the open, notorious, continuous and adverse use across the land of another from a residence or place of business to a public road for more than twenty years affords a conclusive presumption of a written grant of such way (*Clement* v. *Bettle,* 65 N. J. Law, 675 [48 Atl. 567]), and that when the passway has been used for something like a half century, it is unnecessary to show by positive testimony that the use was claimed as a matter of right, but that after such user the burden is on the plaintiff to show that the use was only permissive."

We agree with the conclusions of the trial court that plaintiff has failed to establish by any convincing testimony that the undisputed user running through all those years was permissive only as against the presumptions from the undisputed facts in the case.

It is further urged in plaintiff's behalf that defendant could not "tack on" the period of his use and occupation to that of his predecessors. The question of the continuity of possession and user by successive holders in privity to sustain title by prescription is not involved here. The statute of limitations had run its course in his favor long before the elder Stafford died. Like peaceable possession and user continued thereafter by his successors as of right and not of suffrance was but confirmatory of his established easement. Aside from the conclusive presumption of a written grant from open and continuous adverse user for much longer than the statutory period of prescription, the facts in this case touching the original transaction are persuasive of the purchase of a perpetual right of way which if then questionable because oral would be relieved from the statute of frauds by possession and continuous user for the purpose for which it was purchased until perfected by prescription.

The contention is made that defendant acquired no right to the driveway because no mention is made of it in his muniments of title to the 40 acres it connects with the highway. This easement rested upon the servient estate it crossed as an incorporeal hereditament appurtenant to the otherwise isolated 40 acres of Stafford for the benefit of which it was secured, incident to that estate as directly essential and convenient to its use and enjoyment (*Fond du Lac Water Co.* v. *City of Fond du Lac*, 82 Wis. 322 [52 N. W. 439, 16 L. R. A. 581]), and as such would pass with it by inheritance or conveyance of the land (*Sanxay* v. *Hunger*, 42 Ind. 44).

An indicated obligation assumed by the elder Stafford on procuring this easement was to segregate it by the erection and maintenance of a fence on the east side of the land or driveway. Mindful of the hostile

activities of these litigants in relation to this strip of land the learned circuit judge wisely provided in the decree that plaintiff should not so interfere with the land as to render it unsuitable for a driveway and defendant should maintain a proper fence on its east side, with a gate at the highway and at the entrance to his 40 acres.

The decree is affirmed, with costs to defendant.

FELLOWS, C. J., and WIEST, CLARK, SHARPE, BIRD, and MOORE, JJ., concurred.

The late Justice STONE took no part in this decision.