### OUTHWAITE *v.* FOOTE.

1. EASEMENTS—PRESCRIPTION FOUNDED ON SUPPOSITION OF GRANT.
   Prescription is founded upon the supposition of a grant.

2. SAME—USE TO SUPPORT PRESCRIPTION MUST BE ADVERSE.
   The use or possession to support prescription must be adverse, or of such nature as indicates that it is claimed as a right and not by permission.

3. SAME—ADVERSE USER DEFINED.
   Adverse user is defined as such a use of the property as the owner himself would exercise, disregarding the claims of others entirely, asking permission from no one, and using the property under a claim of right.

4. SAME—ADVERSE USER MUST BE EXCLUSIVE.
   Adverse user supporting prescription must be exclusive in the sense that the right does not depend upon a like right in others.

5. SAME—ORAL GRANT MAY RIPEN INTO EASEMENT.
   Where the owners of all of the lots in a city block by

[1]Easements, 19 C. J. § 18; [2]Id., 19 C. J. § 49; [3]Id., 19 C. J. §§ 50, 51; [4]Id., 19 C. J. § 59; 9 R. C. L. 976, 977; 2 R. C. L. Supp. 874; 4 R. C. L. Supp. 626; 5 R. C. L. Supp. 529; [5]Id., 19 C. J. § 55.

agreement established an alley through the middle of it by taking five feet off the rear end of each lot. with the intent to grant to each other the permanent use of the five-foot strip, and for about 35 years the alley has been used by all of the residents in the block as though the land had been dedicated for that purpose, the fact that the original grant to each other was oral will not prevent the use made thereof ripening into an easement.

6. SAME—PERMISSIVE USER RULE NOT APPLICABLE WHERE ATTEMPT TO GRANT IS VOID UNDER STATUTE OF FRAUDS.

The rule that a permissive user will not ripen into an easement by prescription does not apply where there has been an attempt to grant the easement which is void because of the statute of frauds.

Appeal from Muskegon; Vanderwerp (John), J. Submitted April 12, 1927. (Docket No. 78.) Decided October 3, 1927.

Bill by Blanche C. Outhwaite against Kathryn M. Foote to enjoin the obstruction of an alley. From a decree for plaintiff, defendant appeals. Affirmed.

*Carpenter & Jackson,* for plaintiff.

*Macdonald & Macdonald* (*Penny & Worcester,* of counsel), for defendant.

SHARPE, C. J.   Block 355 of the revised plat of the city of Muskegon was originally composed of eight lots, four fronting on Miller avenue on the north and four fronting on Hamilton avenue on the south.   Jefferson street is on the east side of the block, and First street on the west.   As early as 1887 the then owners of all of the lots by agreement established an alley through the center of the block, five feet off the rear end of each lot being taken therefor, for their convenience in reaching the rear of their properties. Their homes and outbuildings were erected with a view

---

⁹Easements, 19 C. J. § 55; 44 L. R. A. (N. S.) 89; 9 R. C. L. 779; 2 R. C. L. Supp. 874; 4 R. C. L. Supp. 626.

to such use.   Plaintiff is the owner of lot 8, and defendant of lot 9 on the corner of Hamilton and Jefferson.   The alley has been used by all the residents in the block from the time it was established until recently.   In October, 1926, the defendant caused a fence to be erected across the five-foot strip in the rear of her lot, thereby closing the alley.   Plaintiff brought this suit to enjoin the maintenance of the fence.   The trial court found that plaintiff's predecessors in title had acquired an easement by prescription over this five-foot strip, and granted the relief prayed for.   Defendant appeals.

Prescription is founded upon the supposition of a grant.   The use or possession to support it must be adverse, or of such a nature as indicates that it is claimed as a right.   Permission is insufficient.

"Adverse user is defined as such a use of the property as the owner himself would exercise, disregarding the claims of others entirely, asking permission from no one, and using the property under a claim of right." 9 R. C. L. pp. 776, 777.

It must be exclusive in the sense that the right does not depend upon a like right in others.   *First National Bank* v. *Vanden Brooks,* 204 Mich. 164.

The parties who owned the land in this block at the time the alley was opened for use have presumably passed away, as none of them were called as witnesses. The defendant, a daughter of one of them, testified:

"My parents owned the rest of the land in that block and made this alley by taking five feet off the end of each lot facing on Hamilton avenue and five feet off each lot facing on Miller avenue, which was for the benefit of them all.   It would be pretty hard for my uncle, John Miller, to get his wagons and teams into his barn without getting over onto the south side of the alley.   A five-foot alley would have been a pretty small alley to have been of any use.   It required a little off each lot in order to make it a practical working alley.   Therefore, each lot had the right to

the use of that alley all the way through and used that right continually until the time that we closed up the entrance to the alley.   As far as I know they bought and sold their property with reference to the use of the alley as it appeared there.   This sign was a 'private way' on the Miller barn on the corner and on my mother's fence before we took it down.   There was a 'private way' sign on this old fence, before we built the new house three years ago.   This private way was ours and every one else's and belonged to all that bordered on that alley.   Each one had paid for his share, given his share, and paid for the right to have the alley there, but not by dedicating five feet of his land.   This alley was not actually dedicated, but each gave five feet off his own ground and was entitled to expect the use of the alley until it became a menace and nuisance to somebody.   It is my right to do what I want with my own land."

Plaintiff testified that she had known of the existence of the alley for about 35 years; that she did not know it was a private alley, and that defendant told her at the time she purchased that "each of the owners of the lots gave five feet off each lot for the alley."

There is an abundance of proof to show that the alley has been used until recently as though the land had been dedicated by the owners for that purpose. There is no positive proof of the agreement or understanding of the owners at the time such use began.

We are impressed that, in view of the long continued use which followed and the testimony of defendant that "each one had paid for his share, given his share, and paid for the right to have the alley there," and that so far as she knew "they bought and sold their property with reference to the use of the alley as it appeared there," it may well be said that "the right, though orally granted, was in the nature of an easement or a permanent interest in another's land without profit in the nature of a dominant estate with the right at all times to enter and use it for the purpose specified," and that "it might be acquired by prescription

in the same manner as title to the fee of the land and within the same time." *Wortman* v. *Stafford,* 217 Mich. 554, 559.

In discussing the claim "that a user having its inception in license or favor cannot ripen into a prescriptive right," this court said in *Berkey & Gay Furniture Co.* v. *Valley City Milling Co.,* 194 Mich. 234, 242:

> "It has been held that the open, notorious, continuous, and adverse use across the land of another from a residence or place of business to a public road for more than 20 years affords a conclusive presumption of a written grant of such way (*Clement* v. *Bettle,* 65 N. J. Law, 675 [48 Atl. 567]), and that when the passway has been used for something like a half century, it is unnecessary to show by positive testimony that the use was claimed as a matter of right, but that after such user the burden is on the plaintiff to show that the use was only permissive."

We have not overlooked our holding in *Seifferlein* v. *Foerster,* 218 Mich. 179, 185, that—

> "Permissive possession so long as continued does not ripen into title by adverse possession; possession to be adverse must be hostile in addition to being actual, continued, visible, notorious and distinct, and it must be established by clear and cogent proof."

Nor our other cases in which this doctrine has been adhered to: *First National Bank* v. *Vanden Brooks, supra; St. Cecelia Society* v. *Universal Car & Service Co.,* 213 Mich. 569; *Outhwaite* v. *Rodgers,* 214 Mich. 346. But, as was said in *Wortman* v. *Stafford, supra:*

> "This ancient transaction rests on oral evidence with no proof that the agreement was in writing. The facts surrounding it indicate an easement rather than a lease or license."

It seems clear that there was an intent on the part of the original owners to grant to each other the permanent use of the five-foot strip in the rear of their

lots, and, if they so agreed, the fact that such agreement was not reduced to writing will not prevent the use made thereof ripening into an easement.

"The rule that a permissive user will not ripen into an easement by prescription does not, however, apply where there has been an attempt to grant the easement which is void because of the statute of frauds." 9 R. C. L. p. 779.

It may seem difficult to distinguish this case from that of *Wilkinson* v. *Hutzel,* 142 Mich. 674. A reading of the record and briefs in that case, however, will disclose that the boundary lines of the driveway between the two lots were not clearly established, and the gates, maintained at each end, clearly indicated that "this way was used by the owners of these adjoining lots in common." The trial court found that its use as a common driveway was not essential to the ingress into or egress from plaintiff's premises. The record in that case is barren of any testimony tending to show that the neighborly arrangement was in the nature of an agreement or intended to confer any right other than a permissive one.

The decree will be affirmed, with costs to appellee.

BIRD, SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.