*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES PELHAM,

      Plaintiff-Appellee,

v

BRIAN LYNN BATES,

      Defendant-Appellant.

UNPUBLISHED
February 19, 2019

No. 341231
Lenawee Circuit Court
LC No. 16-005507-CH

Before: CAVANAGH, P.J., and BORRELLO and REDFORD, JJ.

PER CURIAM.

In this quiet title action, defendant appeals as of right the trial court's order denying defendant's motion for summary disposition and granting plaintiff's motion for summary disposition under MCR 2.116(C)(10). The trial court concluded that there was no genuine issue of material fact that an easement by prescription had been established over defendant's property for ingress and egress to plaintiff's otherwise landlocked property. For the reasons set forth in this opinion, we reverse and remand for further proceedings.

## I. BACKGROUND

This case arises out of a dispute over plaintiff's ability to access his property by crossing a strip of property owned by defendant. Plaintiff owns three parcels of property in Lenawee County, Michigan. Parcels 1 and 2 are adjacent to one another, and Parcel 2 is separated from Parcel 3 by a strip of land that was formerly a railroad right of way and currently is owned by defendant. Parcel 3 is north of Parcel 2, and the former railroad right of way runs approximately east-west.

Plaintiff was conveyed all three parcels in 2009 and traced his chain of title for the three parcels back to 1985, when John and Josephine Alfonsi conveyed all three parcels to Bluford and

Linda Sloan. In 1994, the Sloans conveyed the three parcels to Duaine and Marion Lindeman.[1] The three parcels were conveyed to U.S. Bank, NA via sheriff's deed in 2007, and the statutory redemption period expired in 2008 without the property having been redeemed. U.S. Bank, NA conveyed the three parcels to plaintiff in 2009.

Defendant's property had been owned by Bernice Kerr in 1964, when Kerr conveyed a section of "the Michigan Central Railroad Company's former Ypsilanti Branch right-of-way" to Letha Kelley. Letha conveyed the property to herself and Dan Kelley in 1983, and the property was conveyed from Dan's estate to Marsha Kelley in 2002. In 2011, Marsha initiated an action to quiet title to property that included the former railroad right of way. Marsha obtained a default judgment quieting title in her favor and indicating that she held title in fee simple absolute. Plaintiff was not a named defendant in Marsha's quiet title action, but Marsha's action did name the Alfonsis and "their heirs and assigns." Marsha conveyed property containing the former railroad right of way to defendant in 2012.

The dispute at issue in the instant case apparently developed in November 2014, when defendant called the police and accused plaintiff of trespassing on his property after finding plaintiff's tracks in the snow. According to plaintiff, prior to November 2014, he had always crossed the former railroad right of way to access Parcel 3.

Plaintiff initiated this action on January 29, 2016. In his complaint, plaintiff alleged that Parcel 3 is surrounded by Goose Creek and the former railroad right of way, that Goose Creek is dangerous to cross because it "is very deep and has quick sand mud surrounding it," that it is impossible to access Parcel 3 without crossing the former railroad right of way or crossing defendant's property in order to cross Goose Creek, and that the only reasonable means of accessing Parcel 3 is to cross the former railroad right of way from Parcel 2. Plaintiff further alleged that previous owners of Parcel 3 had accessed Parcel 3 without a recorded easement. Specifically, plaintiff maintained that Lindeman indicated that he had been able to cross the former railroad right of way to access Parcel 3 when he owned that parcel from 1994 to 2008 because he had an agreement with Dan Kelley, who owned the former railroad right of way at the time. According to plaintiff, Buford Sloan also accessed Parcel 3 when he owned it by crossing the former railroad right of way. Plaintiff alleged that he obtained the parcels at issue believing that he would be able to access Parcel 3 via the former railroad right of way as previous owners had done.

Plaintiff asserted three counts in his complaint: easement by prescription, acquiescence, and easement by necessity. Regarding easement by prescription, plaintiff alleged that an easement by prescription had been created based on the use of the former railroad right of way to access Parcel 3 by plaintiff and his predecessors in interest, the Sloans and the Lindemans. Next, plaintiff alleged that both defendant and defendant's predecessors in interest to the former railroad right of way had acquiesced to the use of that strip of land as an easement for accessing Parcel 3 for more than 15 years. Finally, plaintiff sought an easement by necessity based on his

---

[1] Because Marion is not otherwise involved in the underlying facts of this case, we refer to Duaine Lindeman as "Lindeman" throughout this opinion.

allegations that Parcel 3 was landlocked and that he was constructively unable to access the property by any means other than crossing the former railroad right of way.

After the trial court denied a motion for summary disposition filed by defendant and a separate motion for partial summary disposition filed by plaintiff, plaintiff moved again for summary disposition pursuant to MCR 2.116(C)(10). Plaintiff primarily argued that a prescriptive easement across the former railroad right of way had been created as a result of the use of plaintiff, as well as his predecessors in interest, dating back to at least 1985. Because the use had been ongoing for so long, argued plaintiff, the burden was on defendant to show that the use was merely permissive. Plaintiff maintained that once the easement was established, it passed by the deed of the dominant estate even though not actually mentioned in the instrument. Plaintiff also argued that the easement by prescription had been created before plaintiff even acquired the parcels.[2]

In support of this argument, plaintiff attached the affidavits of Duaine Lindeman and Tim Kelley. Lindeman averred that Bluford Sloan allowed him to hunt on the three parcels beginning in 1985, before Lindeman bought the property from the Sloans. According to Lindeman, Bluford Sloan told him that Dan Kelley (the owner of the former railroad right of way at the time) "told Bluford Sloan that he could use the abandoned railroad property for access to the third parcel of property located on the North side of the abandoned railroad tracks because the abandoned railroad belonged to both of them." The Sloans also used the former railroad right of way to access other property that they owned in addition to Parcel 3. Lindeman averred that the Sloans told him when he bought the parcels from them that he had the right to use the former railroad right of way to access Parcel 3; Lindeman further averred that after he bought the parcels, Dan Kelley told him that he could use the abandoned railroad property to access Parcel 3 because it belonged to both Dan and Lindeman. Lindeman averred that he used the former railroad right of way to access Parcel 3 from the time he began hunting on the property and that he continued to use it openly until approximately 2007.

Tim Kelley is the son of Letha Kelley, who previously owned the former railroad right of way. Tim averred that when Letha purchased the property from Bernice Kerr in 1964, Kerr still owned approximately 3 acres of property north of the railroad right of way that became landlocked. According to Tim, he frequently hunted on the parcels during the time that they were owned by the Alfonsis during the 1980s, and he used the former railroad right of way to access Parcel 3. Tim also averred that others with permission to hunt on the parcels also used the former railroad right of way to access Parcel 3 during this time.

Defendant also filed another motion for summary disposition, arguing that plaintiff had not demonstrated the establishment of an easement by prescription. Defendant argued, as pertinent to the resolution of this appeal, that there could be no prescriptive easement because Lindeman used the former railroad right of way with Dan Kelley's permission and a permissive use can never ripen into a prescriptive easement.

---

[2] Plaintiff also reasserted in this motion for summary disposition his previous argument that there was an implied reservation of an easement of necessity.

After hearing oral arguments on the motion, the trial court granted plaintiff's motion for summary disposition and concluded that an easement by prescription had been established. The trial court announced its ruling as follows:

> *The Court*: In this case there's been a long established use of the railroad property for access to the landlocked property long before the defendant did acquire any interest in the property, which use would then shift the burden of going forward to prove that it was permissive or by consent to the defendant.
>
> The long-established use of a railroad of the implied easement of necessity was not created when plaintiff's property was otherwise landlocked in 1964 and establishes a prescriptive easement without the need to show the use was adverse or hostile.
>
> I'm going to grant the Plaintiff's Motion for Summary Judgment and order that his landlocked property has the benefit of an easement by prescription over the vacated railroad property for access. Thank you.
>
> [*Plaintiff's Counsel*]: Thank you very much.
>
> [*Defense Counsel*]: Your Honor, just one question. How are we to define what access that is over the railroad?
>
> *The Court*: At this time it's just the prior aces they've had.
>
> [*Plaintiff's Counsel*]: Which is all pedestrian access, Your Honor.
>
> *The Court*: So I'm not going any further than that at this point.

The trial court entered an order and judgment quieting title. The order providing that defendant's motion for summary disposition was denied and that plaintiff's motion for summary disposition was granted pursuant to MCR 2.116(C)(10). The order stated that plaintiff's motion was granted because there was "no genuine issue of material fact and Plaintiff is entitled to Judgment determining that such an easement by prescription had been established over the property of the Defendant as a matter of law." The order further provided that plaintiff "and his successors in interest, are determined to have the benefit of an easement by prescription, which is appurtenant to and runs with the land of the Plaintiff, for ingress and egress across the portion of the vacated railroad right-of-way owned by the Defendant . . . to the full extent of the Defendant's vacated railroad property that abuts Parcel 3 of the Plaintiff's property, for access to and from the otherwise landlocked property of the Plaintiff . . . as established by the use of the prior owners of the Plaintiff's property."

## II. STANDARD OF REVIEW

This Court reviews the grant or denial of a motion for summary disposition de novo, viewing the evidence in the light most favorable to the nonmoving party. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party

-4-

is entitled to judgment as a matter of law." *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. "In making this determination, the Court reviews the entire record to determine whether defendant was entitled to summary disposition." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009).

This Court also reviews de novo a trial court's rulings on equitable matters, including actions to quiet title. *Dobie v Morrison*, 227 Mich App 536, 538; 575 NW2d 817 (1998); *Dyball v Lennox*, 260 Mich App 698, 703; 680 NW2d 522 (2004).

III. ANALYSIS

Defendant argues that the trial court erred by concluding that a prescriptive easement had been established because the evidence demonstrated that the use of the former railroad right of way by prior owners of plaintiff's parcels was merely permissive and that plaintiff therefore did not show that his predecessors in title satisfied all of the requirements for establishing an easement by prescription before plaintiff acquired the parcels.

"An easement represents the right to use another's land for a specified purpose." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 678; 619 NW2d 725 (2000). "An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Id*. at 679; see also MCL 600.5801. But "[m]ere permissive use of another's property . . . will not create a prescriptive easement." *Plymouth Canton*, 242 Mich App at 679. This Court has explained the meaning of the term "adverse" for purposes of obtaining an easement by prescription:

> A use is "adverse" when it would entitle the landowner to a cause of action against the trespasser:
>
> > The term "hostile" as employed in the law of adverse possession is a term of art and does not imply ill will. Nor is the claimant required to make express declarations of adverse intent during the prescriptive period. Adverse or hostile use is use inconsistent with the right of the owner, without permission asked or given, use such as would entitle the owner to a cause of action against the intruder. [*Goodall v Whitefish Hunting Club*, 208 Mich App 642, 646; 528 NW2d 221 (1995) (some quotation marks omitted; citation omitted).]

In other words, "[u]se of another's property qualifies as adverse when made under a claim of right when no right exists." *Plymouth Canton*, 242 Mich App at 681. Our Supreme Court has further stated that "[a]dverse user is defined as such a use of the property as the owner himself would exercise, disregarding the claims of others entirely, asking permission from no one, and using the property under a claim of right." *Outhwaite v Foote*, 240 Mich 327, 329; 215 NW 331 (1927) (quotation marks and citation omitted).

Furthermore, "a claimant seeking to prove the existence of a prescriptive easement may establish that the requisite elements were met by the claimant's predecessor in interest." *Marlette Auto Wash, LLC v Van Dyke SC Properties, LLC*, 501 Mich 192, 203; 912 NW2d 161 (2018). "When a prescriptive easement vests with the claimant's predecessors in interest, the easement is appurtenant and transfers to subsequent owners in the property's chain of title without the need for the subsequent owner to establish privity of estate." *Id*. at 203-204. In such circumstances, the easement passes "by the deed of the dominant estate, although not expressly mentioned in the instrument of transfer, and even without the word 'appurtenances.'" *Id*. at 206 (citation and some quotation marks omitted).

In this case, the trial court ruled that the easement by prescription was established "by the use of the prior owners of the Plaintiff's property." Plaintiff relied on the affidavits of Lindeman and Tim Kelley to establish the use of the claimed easement by plaintiff's predecessors in interest to the parcels. These affidavits described use of the claimed easement dating back to the early 1980s. "[W]hen a claimant can demonstrate that a predecessor-in-interest met the requirements for the establishment of a prescriptive easement, the vested easement transfers to subsequent property owners in the chain of title without the obligation to show privity of estate," and "when the property has been adversely used in excess of the prescriptive period for a substantial period of time, the burden shifts to the servient estate owner to show that the use was merely permissive." *Id*. at 206. Tim Kelley's affidavit only specifically refers to use from approximately 1981 to 1985, while the Alfonsis still owned the parcels. Lindeman's affidavit describes use of the claimed easement from 1985 to 2007. Because plaintiff did not submit evidence specifically establishing use of the claimed easement before 1981,[3] he necessarily must rely on the use described by Lindeman to show that the use of the claimed easement by plaintiff's predecessors in interest satisfied the requisite 15-year period. *Id*. at 203; *Plymouth Canton*, 242 Mich App at 679.

However, Lindeman's affidavit indicated that Dan Kelley had indicated that the former railroad right of way could be used to access Parcel 3 because it "belonged" to both Dan Kelley and the owner of the parcels—i.e. the Sloans from 1985 to 1994 and Lindeman from 1994 to 2007. Lindeman's affidavit statements could be understood as an indication that he used the former railroad right of way with the permission of Dan Kelley as the owner of that property, in which case his use could not create an easement by prescription. *Plymouth Canton*, 242 Mich App at 683 ("[A] mutual, permissive use of another's land does not constitute adverse use that may ripen into a prescriptive easement.").

But these statements could also be understood as an acknowledgment by Dan Kelley of a longstanding, pre-existing right held by the owners of the parcels to use the former railroad right

---

[3] Although Tim's affidavit states that "the owners of the property previously owned by Bernice Kerr continued to use the vacated railroad property for access to the otherwise landlocked three acre parcel of property North of the vacated railroad property . . . after it was sold to his mother," Tim did not provide any specific time frame other than referring to the 1980s and the years 1981-1982. Therefore, there is no evidence of use prior to this time.

of way to access Parcel 3. There is no indication in the statements that Dan Kelley was affirmatively granting *permission* to Lindeman or the Sloans, or that Lindeman or the Sloans affirmatively sought such permission. Furthermore, the statements indicate that Dan Kelley apparently believed that the former railroad right of way belonged to both himself and whomever owned Parcel 3. "[W]hen the passway has been used for something like a half century, it is unnecessary to show by positive testimony that the use was claimed as a matter of right, but that after such use[ ] the burden is on the [servient estate owner] to show that the use was only permissive." *Marlette Auto Wash*, 501 Mich at 204 (quotation marks and citation omitted; second alteration in original); see also *id.* at 206 (noting that the same rule applies when the open and notorious use has continued "for over a quarter of a century"). Once the statutory limitations period has expired such that an easement by prescription has been obtained by a former owner of the dominant estate, "[l]ike peaceable possession and user continued thereafter by his successors as of right, and not of sufferance, [is] but confirmatory of his established easement." *Wortman v Stafford*, 217 Mich 554, 560; 187 NW 326 (1922).[4] Thus, it would also be reasonable in this case to conclude that plaintiff showed a longstanding use of the former railroad right of way for purposes of accessing Parcel 3 and that defendant failed to meet his burden of showing that the use was merely permissive.

In this case, Lindeman's affidavit statements are ambiguous at best. Because reasonable minds could differ on their meaning, a genuine issue of material fact exists on the question whether Lindeman's use was permissive or adverse. *West*, 469 Mich at 183. Therefore, the trial court erred by concluding that an easement by prescription had been established as a matter of law.[5] Further, we note that on remand, the parties and the trial court should be sure to address the precise location of the claimed easement over the former railroad right of way as necessary. "A prescriptive right of way, for example, cannot be acquired to pass over a tract of land generally; such right must be confined to a specific way, or a definite, certain and precise line, which has been used as a right of way." *Village of Manchester v Blaess*, 258 Mich 652, 655; 242 NW 798 (1932) (quotation marks and citation omitted).

Nonetheless, plaintiff argues in the alternative that he is entitled to an easement by prescription based on the imperfect creation of an "intended implied easement by necessity" in 1964 when Bernice Kerr conveyed the former railroad property and landlocked Parcel 3.

---

[4] See also *Ashley v Waite*, 33 Mich App 420, 423; 190 NW2d 370 (1971) (holding that the claimant of an easement by prescription had been an adverse user of the land during the time that all of the owners of the servient estate had thought that the claimant had a right to use the land and therefore never extended permission to the claimant to use it).

[5] It is unnecessary at this juncture to address defendant's additional arguments that an implied easement by necessity could not have been established. The trial court did not rule that such an easement existed and did not grant summary disposition to plaintiff on this basis. Generally, "[a]ppellate review is limited to issues actually decided by the trial court." *Allen v Keating*, 205 Mich App 560, 564; 517 NW2d 830 (1994). In other words, this particular argument constitutes a challenge to a ruling that was never made by the trial court, and we decline to consider this issue.

Plaintiff relies on two decisions of this Court for the proposition that use under a failed attempt to create a servitude may be relied on to create a prescriptive easement. See *Plymouth Canton*, 242 Mich App at 684 (stating that "use under an invalid easement may establish an easement by prescription"); *Mulcahy v Verhines*, 276 Mich App 693, 699-700; 742 NW2d 393 (2007) ("[U]se that is made pursuant to the terms of an intended but imperfectly created servitude can establish a prescriptive easement when all the other requirements for such an easement are met."). However, this principle was applied in both *Plymouth Canton* and *Mulcahy* within the context of deficiencies in the creation of *express* easements. *Plymouth Canton*, 242 Mich App at 684; *Mulcahy*, 276 Mich App at 700. In the instant case, there is no evidence of an intent to create an express easement over the former railroad right of way for purposes of accessing Parcel 3. Plaintiff's reliance on *Plymouth Canton* and *Mulcahy* in this respect is therefore misplaced.

Finally, with respect to plaintiff's argument that he is entitled to an easement by necessity in the alternative, plaintiff does not argue that the trial court erred by denying plaintiff's earlier partial motion for summary disposition that was premised on his implied easement of necessity claim. Plaintiff does not present any cogent argument or legal analysis that appears directed at any ruling by the trial court on this issue. Instead, plaintiff appears to argue with portions of defendant's argument related to an easement by necessity that, as previously stated, are unnecessary for this Court to address at this juncture. Therefore, plaintiff has abandoned his argument in this regard for purposes of the instant appeal. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) ("It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") (quotation marks and citation omitted). Moreover, it is appropriate for the trial court to actually address and rule in the first instance on these various additional arguments raised by the parties, many of which were not addressed by the trial court in its ruling denying plaintiff's partial motion for summary disposition that was premised on the claim of an implied easement by necessity. *Allen*, 205 Mich App at 564.

Reversed and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello
/s/ James Robert Redford