*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEONARD ASTEMBORSKI and DEBORAH
ASTEMBORSKI,

        Plaintiffs/Counterdefendants-
        Appellants/Cross-Appellees,

v

CHERYL MANETTA and MELISSA SCOTT, as
Co-Trustees of the LYLE D. SCOTT TRUST and the
YVONNE ELAINE SCOTT TRUST, JON E.
UNRUH, and BONNIE A. UNRUH,

        Defendants/Counterplaintiffs-
        Appellees/Cross-Appellants.

UNPUBLISHED
February 1, 2022
APPROVED FOR
PUBLICATION
March 17, 2022
9:10 a.m.

No. 352066
Roscommon Circuit Court
LC No. 15-722743-CH

Before: RONAYNE KRAUSE, P.J., and CAMERON and RICK, JJ.

CAMERON, J.

Plaintiffs appeal a November 14, 2019 judgment of no cause of action that was entered by the trial court on the basis of the court's conclusion that defendants were not liable for trespass or nuisance because defendants held a prescriptive easement. Defendants cross-appeal the trial court's November 6, 2017 order, which granted plaintiffs' partial motion for summary disposition. We affirm the trial court's November 14, 2019 judgment and, consequently, do not need to consider defendants' arguments concerning the November 6, 2017 order.

## I. BACKGROUND

This case arises from a dispute over defendants' rights to use a portion of plaintiffs' riparian property. Harry Groak originally owned all of the property underlying the dispute in this case. In the mid-1960s, Groak partitioned the property into three parcels. Groak retained one of the parcels (the servient estate), which is the only parcel that abuts Higgins Lake. Groak sold the other two parcels to Howard and Mable Diehl in 1964 and to Lyle and Yvonne Scott in 1965. Groak granted a 20-foot-wide easement across his parcel "for access to Higgins Lake[.]"

-1-

A dock that extended from the easement was thereafter installed, and it was utilized by the Diehls, Lyle, and Yvonne, as well as their family and guests. The easement dock was stored on the easement during the months that it was not in Higgins Lake. The Diehls, Lyle, and Yvonne moored boats and installed boat hoists. They also used the easement for other recreational activities, such as sunbathing and picnicking. There is no evidence that Groak or his son gave the Diehls, Lyle, or Yvonne permission to engage in these activities.[1]

In 1980, Robert and Mary Ann Russom, who were the original plaintiffs in this matter, entered into a land contract to purchase the servient estate. According to Robert, he made a verbal agreement with Howard in 1981 that Howard could "put his boat and stuff out there." When asked if he had a similar deal with the Scotts, Robert responded that Howard was "kind of the spokesman." However, Robert denied that he had made "any deals verbally with" Lyle or Yvonne, who later transferred interests in the property to their respective trusts, defendants the Lyle D. Scott Trust and the Yvonne Elaine Scott Trust. In 1993, the Diehls sold their property to Linda Cauzillo, who later sold the property to Carl and Lucy Scott in 2001. After Carl died, Lucy transferred her property to defendants Jon and Bonnie Unruh in 2014.

In September 2015, the Russoms informed defendants that the language of the easement only allowed access to Higgins Lake and that no other uses of the easement or the area extending from the easement would be permitted. Defendants did not remove the easement dock. In November 2015, the Russoms filed suit, alleging that defendants had impermissibly used the easement for purposes beyond mere lake access. The Russoms requested declaratory relief and damages in relation to claims for trespass and nuisance. Defendants argued that the grant of access to Higgins Lake included a full range of riparian or littoral rights, along with use of the easement's beach area for recreational activities. In the alternative, defendants argued that they had acquired prescriptive rights to continue the challenged uses. In 2016, the Russoms sold the property to plaintiffs, and plaintiffs were substituted as the named plaintiffs in this case.

The trial court ruled as a matter of law that the easement only contemplated access to Higgins Lake. The case then proceeded to trial. At the conclusion of the bench trial, the trial court held that defendants had a prescriptive easement for the seasonal installation and removal of the easement dock, to moor boats, and to engage in certain recreational activities on the easement. As a result, the trial court entered a judgment of no cause of action on plaintiffs' claims for nuisance and trespass. These appeals followed.

## II. PRESCRIPTIVE EASEMENT

Plaintiffs argue that the trial court erred by concluding that defendants "had proven by clear and cogent evidence that they or their predecessors had continuously used the easement [for purposes outside of the scope of the express easement] for longer than the statutory period in a manner that was hostile and adverse to the rights of" the owners of the servient estate. We disagree.

---

[1] Groak died in the 1970s. Thereafter, the servient property was owned by Groak's son.

## A. STANDARDS OF REVIEW

"A trial court's factual findings in a bench trial are reviewed for clear error." *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 59; 698 NW2d 900 (2005). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made. This Court is especially deferential to the trial court's superior ability to judge of the relative credibility of witnesses[.]" *Smith v Straughn*, 331 Mich App 209, 215; 952 NW2d 521 (2020) (alteration in original; quotation marks and citations omitted). We review a trial court's conclusions of law in a bench trial de novo. *Chelsea Inv Group, LLC v Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010).

## B. ANALYSIS

"Land which includes or is bounded by a natural watercourse is defined as riparian." *Thies v Howland*, 424 Mich 282, 287-288; 380 NW2d 463 (1986). It is well established that a riparian owner enjoys "certain exclusive rights," which include "the right to erect and maintain docks along the owner's shore, and the right to anchor boats permanently off the owner's shore." *Id*. at 288. (citations and footnote omitted). A nonriparian owner, on the other hand, has "a right to use the surface of the water in a reasonable manner for such activities as boating, fishing and swimming," as well as "the right to anchor boats temporarily." *Id*. However, "a riparian owner may grant nonriparian owners the right to access and enjoy a lake by easement or license." *Little v Kin*, 249 Mich App 502, 510; 644 NW2d 375 (2002).

"An easement is a limited property interest; it is the right to use the land burdened by the easement for a specific purpose." *Smith*, 331 Mich App at 215. "[A]n easement may be created by express grant, by reservation or exception, or by covenant or agreement[.]" *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 399; 964 NW2d 846 (2020) (quotation marks and citation omitted). Easements may also be acquired by prescription. *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018).

> The land burdened by [an] easement is the servient estate, and the land benefited by the easement is the dominant estate. An easement holder's use of the easement is limited to the purposes for which the easement was granted and must impose as little burden as possible to the fee owner of the land, but the easement holder nevertheless enjoys all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement. The necessity of an easement holder's conduct can be informed by the purpose and scope of the easement in addition to the easement holder's accustomed use of the easement.
>
> A fee owner may use his or her land on a servient estate for any purpose not unreasonably inconsistent with the rights of the easement holder. . . . Where the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted. The scope of an easement may only be determined by reference to extrinsic evidence if the text of the instrument is ambiguous. [*Smith*, 331 Mich App at 215-216 (alteration in original; quotation marks and citations omitted).]

Before trial, the trial court concluded as a matter of law that the plain language of the easement established that Groak only intended for the owners of the dominant estates to have access to Higgins Lake and that Groak did not intend for those owners to have unlimited use of the easement or riparian rights. Following trial, the trial court held that defendants had an easement by prescription.

"An easement by prescription is based upon the legal fiction of a lost grant, and results from action or inaction leading to a presumption that the true owner of the land, by his acquiescence, has granted the interest adversely held." *Slatterly v Madiol*, 257 Mich App 242, 260; 668 NW2d 154 (2003) (quotation marks and citations omitted). "An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 679; 619 NW2d 725 (2000) (citations omitted).

> To establish an easement by prescription there must be: *First*, continued and uninterrupted use or enjoyment; *second*, identity of the thing enjoyed; *third*, a claim of right adverse to the owner of the soil known to and acquiesced in by him. The accepted rule is that the user must be exercised by the owner of the dominant tenement, and must be open, peaceable, continuous, and as of right. It is sometimes declared that it must also be exclusive, but the term exclusive use does not mean that no one may use the way except the claimant of the easement. It means no more than that his right to do so does not depend on a like right in others. [*Plymouth Canton Community Crier*, 242 Mich App at 679-680 (quotation marks and citations omitted).]

Thus, a prescriptive easement is "no more than an unopposed, continuous trespass [on another's property] for 15 years." *McDonald v Sargent*, 308 Mich 341, 344-345; 13 NW2d 843 (1944). "If no single period of adverse use amounts to the 15-year statutory period, a party claiming a prescriptive interest may tack the possessory periods of their predecessors in interest to aggregate the 15-year period of prescription if the claimant can show privity of estate." *Marlette Auto Wash, LLC*, 501 Mich at 203 (quotation marks and citation omitted).[2]

"The burden is on the party claiming a prescriptive easement to show by satisfactory proof that the use of the defendant's property was of such a character and continued for such a length of time that it ripened into a prescriptive easement." *Mulcahy v Verhines*, 276 Mich App 693, 699; 742 NW2d 393 (2007). In fact, a plaintiff claiming "entitlement to a prescriptive easement" must do so by "clear and cogent evidence." *Matthews v Natural Resources Dep't*, 288 Mich App 23, 37; 792 NW2d 40 (2010). This is an exacting standard:

> [C]lear and cogent evidence is more than a preponderance of evidence, approaching the level of proof beyond a reasonable doubt. That is to say, the standard is much like clear and convincing evidence. . . . Thus, in an adverse possession case, for a party to establish possession by clear and cogent evidence, the evidence must clearly establish the fact of possession and there must be little

---

[2] Plaintiffs do not challenge the trial court's conclusion that privity of estate existed.

-4-

doubt left in the mind of the trier of fact as to the proper resolution of the issue. Thus, where there is any reasonable dispute, in light of the evidence, over the question of possession, the party has failed to meet his burden of proof. [*McQueen v Black*, 168 Mich App 641, 645 n 2; 425 NW2d 203 (1988) (quotation marks omitted).]

In this case, plaintiffs argue that defendants failed to establish by clear and cogent evidence that the challenged uses were adverse and hostile. We disagree.

The element of hostility or adversity "as employed in the law of adverse possession is a term of art and does not imply ill will. Nor is a claimant required to make express declarations of adverse intent during the prescriptive period." *Plymouth Canton Community Crier*, 242 Mich App at 681 (quotation marks and citations omitted). Instead, the "[u]se of another's property qualifies as adverse when made under a claim of right when no right exists." *Id*. Simply put, "[a]dverse or hostile use is use inconsistent with the right of the owner, without permission asked or given," which would entitle the owner to bring an action for trespass or nuisance. *Id*. (quotation marks and citations omitted). Hence, "[m]ere permissive use of another's property . . . will not create a prescriptive easement." *Id*. at 679.

Evidence in this case establishes that, in the 1970s, the Diehls, Lyle, and Yvonne placed the easement dock in Higgins Lake, stored the easement dock on the easement, moored boats, and engaged in other recreational activities on the easement. There is no evidence that Groak or his son provided them with permission to do so. When the Russoms purchased the servient property in 1980, the easement dock was on the easement. According to Robert, he had made a verbal agreement with Howard in 1981 that Howard could "put his boat and stuff out there." When asked if he had a similar deal with Lyle and Yvonne, Robert responded that Howard was "kind of the spokesman." However, Robert denied that he had made "any deals verbally with Lyle and Yvonne Scott." Robert also acknowledged that Howard did not provide any sort of documentation to establish that he was permitted to act on behalf of Lyle and Yvonne. The following line of questioning then occurred:

> *Q*. [W]ould it be fair to say that you presumed it was on behalf of [Lyle and Yvonne]?
>
> *A*. Well, I would guess.
>
> *Q*. If [Yvonne] was to testify, and this is a hypothetical, was to testify today that she had no such agreement with you or [Mary Ann], would she be inaccurate?
>
> *A*. No.

Mary Ann testified that she was present when Robert and Howard discussed the easement. According to Mary Ann, Howard approached Robert and asked "can we keep our boats there?" Mary Ann testified that Howard pointed to the easement and to the boats that belonged to Howard and Lyle. Mary Ann indicated that Robert responded, "Yes." In exchange, Howard permitted the Russoms to put certain property in the Diehls' backyard. Neither Lyle nor Yvonne were present during this conversation. However, according to Mary Ann, Howard was "the glue", "the big brother and the spokesperson" of the group.

The evidence establishes that the Russoms did not provide Lyle and Yvonne with permission to use the property in any manner other than to access Higgins Lake. Although evidence supported that the Russoms believed that Howard represented Lyle and Yvonne's interests, there is no evidence that Howard had authority to negotiate on their behalf. Rather, as noted by the trial court, it was merely the Russoms' impression that this was the case. Moreover, there is no indication that Howard had informed them of the "deal" that he had made with Robert. Indeed, Howard, Lyle, and Yvonne did not testify.[3] Even more importantly, Robert and Mary Ann clarified that they did not have an explicit verbal agreement with either Lyle or Yvonne. Consequently, the trial court did not clearly err by finding that the permission granted to Howard by the Russoms did not extend to Lyle and Yvonne and that Lyle and Yvonne therefore continued to utilize the easement in an adverse or hostile manner after Robert and Howard discussed the use of the easement in 1981.

Although the evidence supports that Robert provided Howard with permission to place a dock and moor boats in the area extending from the easement and to store the dock on the easement, the trial court found that this amounted to an oral license and that Howard's permission was revoked when the Diehls' property was transferred to Cauzillo in 1993. This was not in error.

"[A] license is permission to do some act or series of acts on the land of the licensor without having any permanent interest in it[.]" *Kitchen v Kitchen*, 465 Mich 654, 658; 641 NW2d 245 (2002) (quotation marks and citation omitted). While "a license may be granted orally," an "oral license is necessarily revocable at the will of the licensor without regard for any promised duration." *Id*. at 661. Furthermore, "a license is [generally] revocable at will and is automatically revoked upon transfer of title by either the licensor or licensee." *Id*. at 658-659.

In this case, there is no indication that the Russoms provided the Diehls with any written permission to utilize the easement in a manner other than to access Higgins Lake. Indeed, the Russoms' testimony established that Robert and Howard had a conversation, whereby Robert verbally agreed that Howard could "put his boat and stuff" on the easement. This agreement was made in 1981. The Diehls sold their property in 1993, thereby resulting in an automatic revocation of permission. See *Kitchen*, 465 Mich at 658-659. Furthermore, the agreement was made in exchange for Howard permitting Robert to place items in the Diehls' backyard, so it was personal to Howard and the Diehls, and it would have lapsed when the Diehls moved in any event. Importantly, there is no evidence that the Russoms provided Cauzillo, Carl, Lucy, or the Unruhs permission to utilize the easement in any manner apart from accessing Higgins Lake. Consequently, the evidence does not support that Cauzillo, Carl, Lucy, or the Unruhs' use of the easement was permissive from 1993 through 2015, which more than satisfies the 15-year requirement.

Although plaintiffs argue that the trial court erred as a matter of law because the "mere overuse of an express easement cannot give rise to a prescriptive easement," we disagree. To support this argument, plaintiffs cite *Thies*, 424 Mich at 297, which generally noted that "[a] person entitled to the use of an easement cannot materially increase the burden upon the servient estate

---

[3] Howard and Lyle died before the lawsuit was filed. Testimony supported that Yvonne was in poor health at all relevant times.

beyond what was originally contemplated." Importantly, however, *Thies* did not concern a prescriptive easement. *Thies* concerned whether the defendants were permitted to construct a dock under the plain language of an easement agreement. *Id*. Therefore, plaintiffs' reliance on *Thies* to support that defendants' purported "overuse" of the easement cannot create a prescriptive easement is without legal merit.

Plaintiffs also cite several unpublished opinions to support their argument. However, unpublished opinions are not binding authority. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017). Moreover, the cases cited by plaintiffs are not persuasive because they involve dedications of land, as opposed to private easements. See *2000 Baum Family Trust v Babel*, 488 Mich 136, 144; 793 NW2d 633 (2010) ("A 'dedication' of land is an 'appropriation of land to some public use, accepted for such use by or in behalf of the public. The essence of a dedication is that the covered land will be for the use of the public at large.") (Citations omitted.) Consequently, we conclude that plaintiffs have failed to establish that defendants could not acquire a prescriptive easement through their alleged "mere overuse of the express shared access easement over the subject property."[4]

In sum, we conclude that the trial court properly concluded that defendants established by clear and cogent evidence that they had a prescriptive easement. In so holding, we note that defendants argue on cross-appeal that the trial court erred by granting plaintiffs' motion for partial summary disposition. However, we need not consider this argument because defendants indicate that, "[i]f this Court affirms the trial court's November 14, 2019 bench decision, the need for this cross appeal is rendered moot and the panel may pass on the same."

Affirmed.

/s/ Thomas C. Cameron
/s/ Amy Ronayne Krause
/s/ Michelle M. Rick

---

[4] We acknowledge that defendants argue that this argument is not preserved and therefore not properly before this Court. Assuming without deciding that defendants are correct, we conclude that it would nonetheless be proper to consider plaintiffs' argument. See *In re Conservatorship of Murray*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 349068); slip op at 3 (acknowledging that "this Court may overlook preservation requirements if . . . the issue involves a question of law and the facts necessary for its resolution have been presented").