*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PAUL BURTON, JACK R. GIBSON III, RAY GLOYD, ANTOINETTE GLOYD, AARON GOLDBACH, MEAGAN GOLDBACH, JOYCE HARBACH, JERRY HENRY, ROSE HENRY, MELVIN HERBERT, KIM HERBERT, DAVID MARCEREAU, JERRY MCDONALD, DAWN MCDONALD, RICHARD SHEAR, ROBIN SHEAR, MICHAEL SMITH, and JAN SMITH,

Plaintiffs-Appellees,

v

FRANZ GERSCHWILER and SHANNON D. HOLLAND,

Defendants-Appellants.

UNPUBLISHED
October 19, 2023

No. 362813
Lenawee Circuit Court
LC No. 2021-006788-CH

Before: CAVANAGH, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

Defendants, Franz Gerschwiler and his wife Shannon D. Holland, appeal as of right the opinion and judgment of the circuit court recognizing the existence of an express easement for all plaintiffs, who were outlot property owners of the Boardman Drive area bordering Sand Lake, for ingress and egress over defendants' Lot 17, including pedestrian and vehicular traffic, and hauling boats and equipment. The trial court also recognized a prescriptive easement over Lot 17 for the construction and maintenance of a dock and stairs, with the right to moor up to five boats on the dock, on behalf of plaintiffs Jack Gibson, Ray and Antoinette Gloyd, Joyce Harbach, Jerry and Rose Henry, Melvin and Kim Herbert, David Marceau, Richard and Robin Shear, and Aaron and Megan Goldbach. The trial court additionally held that plaintiffs Paul Burton, Dawn McDonald, and Michael and Jan Smith had not acquired prescriptive rights beyond what was recorded in their deeds, and that the doctrine of acquiescence did not apply.

Defendants argue that the trial court erred for several reasons by recognizing a prescriptive easement, and also by failing to recognize that the express easement in Joyce Harbach's deed was

-1-

an easement in gross and thus personal to only her. We agree only that the trial court errantly included Jack Gibson, and Melvin and Kim Herbert in the list of plaintiffs who had established entitlement to the prescriptive easement, but otherwise affirm.

## I. STANDARDS OF REVIEW

"An action for a prescriptive easement is equitable in nature." *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007). A trial court's ruling on an equitable matter is reviewed de novo. *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 130; 737 NW2d 782 (2007). "The extent of a party's rights under an easement is a question of fact, and a trial court's determination of those facts is reviewed for clear error." *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed." *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 92; 662 NW2d 387 (2003).

## II. PRESCRIPTIVE EASEMENTS

"An easement is the right to use the land of another for a specified purpose." *Heydon v MediaOne*, 275 Mich App 267, 270; 739 NW2d 373 (2007) (quotation marks and citation omitted). "An owner of an easement cannot displace the possessor or the owner of the land, but . . . has a qualified right to possession" to the extent necessary for enjoyment of the easement. *Terlecki v Stewart*, 278 Mich App 644, 660; 754 NW2d 899 (2008).

A claim for a prescriptive easement is similar to a claim for adverse possession, except that the use need not be exclusive. *Higgins Lake Prop Owners Ass'n*, 255 Mich App at 118. "An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 679; 619 NW2d 725 (2000). A prescriptive easement results from "no more than an unopposed, continuous trespass for 15 years." *McDonald v Sargent*, 308 Mich 341, 344-345; 13 NW2d 843 (1944). "The plaintiff bears the burden to demonstrate entitlement to a prescriptive easement by clear and cogent evidence." *Matthews v Dep't of Natural Resources*, 288 Mich App 23, 37; 792 NW2d 40 (2010).

Defendants argue that the testimony of the only four plaintiffs who testified was insufficient to demonstrate that all the elements for a prescriptive easement were met for them, let alone for the other nine plaintiffs who were granted this easement. The trial court reasoned as follows:

> The clear and unrebutted evidence in this case is that Plaintiffs and their predecessors have installed a seasonal dock on Lot 17 since at least 1961, a period of 61 years. Additionally, the stairs have been continuously in existence on Lot 17 for a period of 61 years. These uses exceed the rights granted to them in their express easements and are therefore adverse to Defendants. The unrebutted testimony also establishes that Plaintiffs have neither sought, nor received the permission of the owner of Lot 17. Although Defendant[s] argue that they permitted the installation of a dock since they acquired an interest in Lot 17, Mr.

-2-

Gerschwiler could not recall any conversation in which he advised the backlot owners that he was permitting the installation of the dock. Mr. Gerschwiler's testimony was that the use was permitted because he did not object. Failing to object does not amount to granting permission.

The trial court went on to discuss the 15-year continuous use requirement as follows:

It is also clear that Plaintiffs Jack Gibson, Ray and Antoinette Gloyd, Joyce Harbach, Jerry and Rose Henry, Melvin and Kim Herbert, David Marceau, and Richard and Robin Shear meet the statutory period of 15 years required to establish a prescriptive easement. Each of these Plaintiffs have owned their property for longer than 15 years. Additionally, Aaron and Megan Goldbach's predecessors used the dock by mooring a boat to it for a period of 15 years. . . . Therefore, these Plaintiffs have established a prescriptive easement for the right to install and maintain the stairs and the dock, as well as the right to moor boats.

Defendants object that the trial court did not make findings specific to each plaintiff. Although the trial court did individually address whether each plaintiff had satisfied the 15-year continuous-use requirement, including by finding that five plaintiffs could not meet the requirement, it generalized the nature of the use across neighborhood-association plaintiffs on the basis of testimony from four plaintiffs. Neither the trial court nor defendants provided authority for granting a prescriptive easement to a group of persons, other than the public at large, on the basis of continuous use by select members of the group. However, the trial court did consider the testimonial and documentary evidence and apply it to each plaintiff, not to all plaintiffs collectively, as evidenced by the denial of prescriptive-easement rights to five community members.[1]

## A. OPEN AND CONTINUOUS USE

The evidence supported the conclusion that several plaintiffs, as members of the neighborhood association who had specifically been seen routinely using the dock for many years, were able to demonstrate open and continuous use of the dock for 15 at least years. Richard Shear testified that, since he moved there in 1998, the neighborhood association had maintained the stairs to the dock, and had installed, maintained, and used the dock every summer until defendants removed it in 2021. Joyce Harbach testified about continuous use of the dock and stairs by association members since 1961, recalling the she had used the dock area every weekend. Jerry Henry testified that the association had installed and stored the dock annually, and that he had annually used it for boating since 1993. Antoinette Gloyd testified that she, and members of the association, had used the dock and the stairs leading to it since 1961. Defendant Gerschwiler

---

[1] The trial court denied prescriptive easements to Paul Burton, Jerry and Dawn McDonald, and Michael and Jan Smith, because their deeds did not indicate that they lived in the neighborhood for 15 years. Those parties have not cross-appealed, and so those denials are not at issue.

testified that he observed other landowners maintaining a dock off of Lot 17, with boats docked, since he moved there in 2015.

Again, the trial court granted prescriptive easements for the following plaintiffs: Jack Gibson, Ray and Antoinette Gloyd, Joyce Harbach, Jerry and Rose Henry, Melvin and Kim Herbert, David Marceau, Richard and Robin Shear, and Aaron and Megan Goldbach. Given the above testimony, we conclude that clear and cogent evidence supported the trial court's determination that the uses of the dock and stairs by the Gloyds, Harbach, the Henrys, and the Shears was open and continuous for 15 years.

Defendants argue that Harbach extinguished her right to use the dock by not having exercised that right since 1996. A prescriptive easement is abandoned when the party opposing the easement proves that there had been "continuous nonuse of the easements for 15 years." *Cook v Grand River Hydroelectric Power Co, Inc*, 131 Mich App 821, 827; 346 NW2d 881 (1984). Harbach testified that she began using the stairs and dock in 1961, but that she stopped keeping a pontoon boat at the dock after 35 years. Defendant thus asserts that Harbach abandoned her use of the dock since 1996, 26 years before trial. However, Harbach testified that she engaged in other activities at the dock area: "Take the kids down to the lake, take my dad up in the car and . . . I'd get him out of the car and he'd sit with Aunt Mary, and I'd take the kids down to the lake, and have a party up there. We always had parties up there." She did not testify that she had ceased all activity on the dock. Therefore, defendants did not present clear and cogent evidence that Harbach's right to use the stairs and dock area was extinguished by inactivity since 1996. This leaves Gibson, the Herberts, Marceau, and Goldbachs as requiring proof of open and continuous use for 15 years.

The association members who provided testimony also named other association members whom they had witnessed engaging in open and continuous use of the dock. Richard Shear testified that "the Mullers" used the dock for 15 years, and then were replaced by their successors in interest, the Goldbachs, and that Marceau also used the dock as long as he lived there. To demonstrate that a party's open, notorious, and adverse use of another's land was for a continuous period of 15 years, the party may "tack" together "possessory periods of predecessors in interest[.]" *Killips v Mannisto*, 244 Mich App 256, 259; 624 NW2d 224 (2001). Joyce Harbach also mentioned use of the dock by Marcereau. Jerry Henry testified that the Goldbachs always kept a boat at the dock. Toni Gloyd testified that she had personal knowledge of the Goldbachs' and Marcereau's use of the dock for longer than 15 years. Thus, clear and cogent evidence supported the trial court's determination that there was open and continuous use of the dock by the Goldbachs and Marcereau.

As for Melvin and Kim Herbert, and Jack Gibson, there was no testimony establishing their open use of the dock for the requisite period. The trial court held that their deeds established the continuous use period because they had purchased their property in the area more than 15 years previously. However, the deeds, without more, were insufficient to establish that those parties had openly and continuously used the dock for the requisite 15-year period. Thus, the trial court erred by finding that the Herberts and Jack Gibson had prescriptive rights to use the dock.

## B. NOTORIOUS, ADVERSE USE

Defendant Gerschwiler testified that he was aware of the dock usage since 2015, and permitted it until 2021 when he removed the dock because of concerns about users' behavior, and his own potential liability. Defendants argue that plaintiffs' use of the dock and stairs was not adverse, but rather permissive. Defendants cite Antionette Gloyd's testimony that her cousin, the owner of Lot 16, and her aunt, the owner of Lot 18, gave her permission to swim from the dock when she visited the area dating from circa 1961. Additionally, Joyce Harbach testified that she thought that the owners of Lot 17 permitted installation of the dock in 1961.

However, Richard Shear testified that one of defendants' predecessors in interest had attempted in 1985 to exclude the outlot owners from using the subject dock, but that the dock uses continued, and Antionette Gloyd testified that, following the 1985 dispute, the association continued using the dock and received a letter in 2005 from another predecessor in interest of Lot 17 confirming the right of ingress and egress. Richard further testified that defendants did not say anything about the association members' use of the dock until 2021, and he, Joyce Harbach, Jerry Henry, and Antoinette Gloyd all testified that no association member had asked for permission to use the dock, and Harbach and Henry added that there was no resistance to the use of the dock.

Adverse or hostile use is use that is inconsistent with the rights of the owner, without permission asked or given. *Plymouth Canton Community Crier*, 242 Mich App at 681 (citation omitted). Put another way, adverse use is use that would entitle the true owner to a cause of action against the intruder for trespass. *Id*. An express statement of adverse intent is not required, but the use must be made under a claim of right when no right exists. *Id*. Plaintiffs' installation of a dock and stairs on defendants' property, over which they had an express easement for only ingress and egress, without asking or receiving permission for the dock and stairs, was use that was adverse to the owners of Lot 17. This adverse use continued from at least 1985, when the owners of Lot 17 attempted to prevent use of the dock. In light of this clear and cogent evidence, the trial court's determination that plaintiffs' use of the dock, as members of the association, was notorious and adverse was not clearly erroneous.

## C. SCOPE OF PRESCRIPTIVE EASEMENT

Defendants urge that the trial court should not be allowed to expand the association's express easement for ingress and egress over Lot 17 by granting a prescriptive easement for use of the stairs and dock. However, in *Astemborski v Manetta*, 341 Mich App 190; 988 NW2d 857 (2022), this Court rejected the argument that "mere overuse of an express easement cannot give rise to a prescriptive easement," and concluded that the "plaintiffs have failed to establish that [the] defendants could not acquire a prescriptive easement through their alleged 'mere overuse of the express shared access easement over the subject property.' " *Id*. at 203.

Defendants further argue that the trial court "did not properly consider the scope of use of the granted easement or its[] impact on the Appellant's riparian rights." A prescriptive easement is generally limited in scope by the activity through which it was acquired, considered in light of the previous enjoyment, and what is reasonable under the circumstances. *Heydon*, 275 Mich App at 271.

-5-

In this case, the trial court declared that the prescriptive easement was to construct and maintain "the stairs and dock, as well as the right to moor up to five boats to the dock." The trial court noted that the dock had historically had three to five boats moored, and that the association, which decided which boats could moor, had never had more requests than dock space. Defendant Gerschwiler did not testify that too many boats were moored on the dock, or that the mooring prevented his enjoyment of the lake. He testified that, from 2015 to 2020, the generally T-shaped dock had one or two boats moored. Richard Shear and Antionette Gloyd both testified that there were typically three to five boats docked, while Harbach thought that it typically had four to six boats attached, and Jerry Henry stated that the dock typically moored three or four, but up to six, boats. The court's determination that certain appellees had acquired a prescriptive easement that allowed only the precise use that had previously occurred on the property was not clear error. Further, we note that, by excluding five plaintiffs from the prescriptive easement because they could not establish continuous use for 15 years, the trial court limited the population entitled to access the dock.

In sum, the trial court did not err by recognizing a prescriptive easement for dock usage at the end of Lot 17, but erred by including plaintiffs Melvin and Kim Herbert, and Jack Gibson, among those with such prescriptive rights.

### III. HARBACH'S EXPRESS EASEMENT

Defendants also argue that the trial court clearly erred when it held that Harbach was entitled to an express easement appurtenant over Lot 17 for the use of a dock and to moor boats because the easement granted in Harbach's deed was an easement in gross. Defendants did not raise this issue in the trial court and, because Michigan follows the "raise or waive" rule regarding appellate review, we need not address this unpreserved issue. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 2, citing *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).

In any case, we would conclude that defendants' argument is without merit. The express grant contained in Harbach's deed states as follows:

> Right of access to Sand Lake over and across Lots 4 and 17, Supervisor's Plat 3, said right of access to be shared in common with other persons to whom the same right has been given, or shall be given; said right to include pedestrian or vehicular traffic for access purposes, the right to haul boats and other equipment across said lots, but in no case to be used in a manner prejudicial to the rights of other co-owners.

Michigan recognizes two kinds of easements—easements appurtenant and easements in gross. *Heydon*, 275 Mich App at 270. An easement in gross is considered "personal in nature," because it is for the benefit of a particular person, rather than for the benefit of a specific parcel. *Id*. Conversely, an easement that is "incapable of existence apart from the land to which it is annexed," and "is necessarily connected with the use or enjoyment of the benefited parcel and may pass with the benefited property," is an easement appurtenant. *Id*.

Defendants argue that the easement granted in Harbach's deed was one "in gross" which the trial court wrongly applied to the other parcels of the association, rather than limiting it to benefiting Harbach. The trial court relied on defendants' title insurance commitment, which referenced the language of the deed recognizing a "right of access to be shared in common with others" for ingress and egress over Lot 17, including "pedestrian or vehicular traffic for access purposes," along with "the right to haul boats and other equipment across said lots." Defendants do not argue that the trial court wrongly interpreted the language of the easement, but assert that the language does not indicate an easement running with the land. However, the language indicating that the easement was to provide access to Sand Lake to be exercised in common with others suggests not a personal right, but rather a right intended to benefit the lots that were not on the lake, thus one running with the land.

Moreover, Michigan law favors easements appurtenant over easements in gross. "[I]f the easement in question relates in some way to a particular parcel of property, it is nearly always deemed appurtenant." *Penrose v McCullough*, 308 Mich App 145, 148; 862 NW2d 674 (2014). A court may not presume the grant of a personal right when "it can fairly be construed to be appurtenant to some other estate." *Id.* (quotation marks and citation omitted). Because the easement in Harbach's deed appears to be appurtenant, as is presumed under the law, the trial court did not clearly error by interpreting the grant as benefiting the association's backlots.

Affirmed in part, reversed in part, and remanded for entry of an order excluding plaintiffs Jack R. Gibson III, Melvin Herbert, and Kim Herbert from the list of parties who were granted prescriptive rights. We do not retain jurisdiction.


/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Sima G. Patel